## Raines v. East Tennessee Telephone Company, et al.

(Decided November 21, 1912.)

### Appeal from Fayette Circuit Court.

1. Municipal Corporations—Division of Property into Lots Fronting on Avenue—Responsibility of City for Condition of Avenue.—When property in a city is divided into lots fronting on an avenue, the

purchasers of the lots are entitled to the avenue as a way, but the city is not responsible for the condition of the avenue unless it accepts it as a public way.

2.  Telephone Companies—Injury to One From Falling Over Guy Wire—Question for Jury.—A telephone company putting a guy wire on an avenue between the avenue and the side walk, although the sidewalk is within the property line, is liable to one injured by falling over the guy wire, if it was so placed as to render the way unsafe for travel; and this is a question for the jury.

STOLL & BUSH, J. H. MINOGUE and ALPHA HUBBARD for appellant.

GEO. C. WEBB for appellee, East Tennessee Telephone Company.

J. EMBRY ALLEN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

In the year 1888, Crosthwait and Spottswood bought a tract of land known as the Waters' property at the corner of Short and Deweese Streets in Lexington, Ken tucky.  On the Deweese side of the property there was a roadway leading into it.  Crosthwait and Spottswood sold off lots fronting on this roadway, which was called Locust Avenue and was twenty feet wide.  Continuously since that time Locust Avenue has been an open way used by the purchasers of lots abutting on it.  It has never been accepted by the city as a street, and the city has in no way exercised control over it.  But it has for many years been used as a passway by persons owning property fronting on it, and by the public having occasion to go to or from these houses. Sarah E. Smith, the owner of one of these houses, set back her fence four feet from the property line, leaving these four feet as a sidewalk. There was a path on it but no payement had been constructed.  Along the property line she set posts a few feet apart, and on these posts nailed some scantlings, but the scantlings in time fell down, and for a number of years only the posts have been along the line.  She had a telephone put in her house, and a telephone pole was erected on the property line, and to secure it a guy wire was also stretched along the line between her property and Locust Avenue, the guy wire being on her land, but right next to the property line. Thomas Raines on March 2, 1910, went to the house of a property owner who lived

just opposite Mrs. Smith on Locust Avenue. It was after night and as he returned from this house on his way out, he stumbled over the guy wire and sustained painful injuries to recover for which he brought this suit against the Telephone Company and the city of Lexington. At the conclusion of the evidence for him which showed the above facts, the circuit court instructed the jury peremptorily to find for the defendants, and his petition having been dismissed, he appeals.

It is not seriously insisted on the appeal that the peremptory instruction was erroneous so far as the city of Lexington is concerned. The city had not in any way accepted Locust Avenue or taken control of it, and was therefore not responsible for its condition. The peremptory instruction as to the city was proper. But as to the Telephone Company a more difficult question is presented. While Locust Avenue was not a street of the city of Lexington, it was a public passway for the persons living on it, and all those who had occasion to visit them. The purpose of laying it out in the sale of the property was to furnish access to the lots fronting on it. Without Locust Avenue the lots could not have been sold, for there would have been no way to get to them. The property owners were entitled to the use of the avenue, and if the Telephone Company had stretched its wire across the avenue, and Raines had thus been hurt, it could hardly be maintained that the Telephone Company would not be liable; for it had no right to obstruct this avenue, and it could not be excused for putting a dangerous obstruction on it. (Rowan v. Portland, 8 B. Mon., 332; Wickliffe v. Lexington, 11 B. Mon., 163; Schneider v. Jacob, 86 Ky., 104; Cahill v. Layton, 57 Wis., 600; Weldon v. Prescott, 187 Mass., 415; Corby v. Hill, 4 C. B., N. S., 556; Louisville Tel. Co. v. Gasper, 123 Ky., 128; Bevis v. Vanceburg Tel. Co., 121 Ky., 177.)

It is insisted that as the guy wire was on Mrs. Smith's property and not on the highway, a different rule applies. But the rule is that dangerous obstructions placed so near a highway as to endanger persons traveling thereon, are nuisances for which a recovery may be had by a person suffering injury therefrom. Thus in not a few cases, recoveries have been had by persons injured from falling into unguarded pits left at the side of the highway. Under the rule laid down in these cases clearly

the Telephone Company would have been liable to Raines if it had dug a deep pit just along the property line where the guy wire was, and had left it unguarded, and he had fallen into it in the dark. (15 Am. & Eng. Encyc., 500; Crogan v. Schiele, 55 Am. Rep., 88; Beck v. Carter, 6 Hun., 607, 23 Am. Rep., 175; 3 Lawson Rights and Remedies, sec. 1157.) There was nothing that would show that the property line was between the avenue and the sidewalk. The sidewalk had been left for the use of the public. In the dark a person could not tell where the highway ended or when he had reached the property line, as he would presume the sidewalk was in the highway. Raines was hurt as he was returning from the house which he had visited, and was endeavoring to get upon the sidewalk.

In Dillion on Municipal Corporations, section 1019, the learned author says:

"It is sufficient, we think, if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day; and whether they are so or not is a practical question, to be determined in each case by its particular circumstances."

In Wilson v. Tel. Co., 41 La. Ann., 1043, the Telephone Company had put a guy wire on neutral ground outside of the line of the highway, and a fireman driving an engine had been injured by the guy wire. It was held that the posts were placed in dangerous proximity to the street, and that ordinary prudence and a due regard for the safety of the public would have dictated that the guy wire should not be so placed as to endanger others. The company was held liable. In Sisk v. Crump, 112 Ind., 504, a landowner erected upon his property a barbed wire fence along the line of a public highway, so constructed as to be dangerous to horses and cattle passing along the highway. Holding that a recovery might be had for a horse thus injured, the court said:

" 'Enjoy your property in such a manner as not to injure that of another person' is a maxim of the law that rules many cases, and we think it must rule the one at bar. The appellee had a right to select his own fence, but he had no right, under the circumstances stated in the complaint, to construct it so as to make it dangerous to animals passing along the highway, for, in doing so, he violated the maxim we have quoted. Suppose he had dug

a deep trench along the line of the highway and had covered it with plank so thin as to give way beneath the weight of the smallest domestic animal, would he not be liable to the owner of a horse killed in attempting to cross the trench? Again, suppose that a landowner places posts along the line of his land and attaches wires near the ground, where they could be hidden by the grass or weeds, would he not be libale to the owner for the value of a horse caught in the wires and killed? The case as made by the complaint is in principle the same as the cases we have given as illustrations.''

In Rachmel v. Clark, 205 Penn., 314, the defendants were accustomed to stand large pieces of granite and slate in front of their factory building, but not within the line of the street. The space between the property line and the factory had not been paved but was open and was used as a part of the sidewalk. The plaintiff was injured by one of these slabs falling upon him. Holding that the defendant was liable the court quoted with approval the following from the opinion of Chief Justice Agnew in Hydraulic Works v. Orr, 83 Pa., 332:

''Duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to accident, the rule will vary. The question then becomes one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence.''

An open pit is often no more dangerous in the dark than an unguarded guy wire. While most of the cases that have been decided have involved unguarded pits, the principle upon which all the cases rest is that the property owner must not place along the highway or very near it, anything endangering travel on the highway. The sidewalk was practically a part of the avenue, and it was a question for the jury under all the circumstances whether the guy wire made the avenue not reasonably safe for travel.

Judgment reversed and cause remanded for a new trial.